# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

Alonda Cooper a/k/a Alonda Fortune,

    Plaintiff

v.

Equifax Information Services, LLC, et al.,

    Defendants

Case No.: 2:19-cv-01124-JAD-DJA

**Order Granting Defendant's Motion to Compel Arbitration, Dismissing Complaint Against Credit Acceptance Corporation, and Closing Case**

[ECF Nos. 33, 34]

    Plaintiff Alonda Cooper accuses Equifax Information Services, LLC; Trans Union, LLC; Experian Information Solutions, Inc.; and Credit Acceptance Corporation of violating the Fair Credit Reporting Act (FCRA)[1] by failing to investigate and correct their allegedly inaccurate credit reporting.[2] Credit Acceptance moves to compel arbitration and dismiss Cooper's claims against it.[3] Cooper asserts that her claims fall outside the scope of the parties' arbitration agreement and that the agreement's terms are unconscionably broad.[4] Because the arbitration clause is valid and expressly governs statutory claims arising from or related to disputes over Cooper's contract with Credit Acceptance, I find that Cooper's claims are subject to arbitration. And because Cooper does not contest dismissal of the complaint pending my determination that her claims against Credit Acceptance belong in arbitration, I grant the motion to compel and dismiss this case without prejudice to the parties arbitrating Cooper's claims.

---

[1] 15 U.S.C. § 1681 *et seq.*

[2] ECF No. 1 (complaint).

[3] ECF Nos. 33, 34 (motion to compel and dismiss or stay).

[4] ECF No. 35.

**Background**

## I. The underlying dispute

Cooper sues three credit-reporting agencies[5] and Credit Acceptance over allegedly inaccurate information involving her Credit Acceptance account.[6] She claims that, despite her account being "closed," Credit Acceptance "furnished" "inaccurate information" about her account to the credit-reporting agencies, including that she has a past-due balance of roughly $4,000.[7] Cooper notified the credit-reporting agencies of this inaccuracy in the fall of 2018, but neither they, nor Credit Acceptance, corrected the information on her credit report nor flagged the disputed information as contested.[8] Cooper also states that Credit Acceptance and the credit-reporting agencies uniformly failed to investigate these inaccuracies, hurting her credit score and causing her significant embarrassment.[9] So she brings eight claims against them, all of which assert both willful and negligent violations of the FCRA.[10]

## II. The arbitration agreement

Cooper provides little detail about the commercial relationship between herself and Credit Acceptance or the account at the heart of this dispute. In its motion to compel, Credit Acceptance attaches a loan agreement between Cooper and George Matick Chevrolet Inc., which

---

[5] Equifax, Trans Union, and Experian have all been dismissed from this suit. *See* ECF Nos. 42, 48, 53.

[6] ECF No. 1.

[7] *Id.* at ¶¶ 18, 26.

[8] *See id.* at ¶ 20, 24, 32, 44. Cooper does not allege that she notified Credit Acceptance directly. *See, e.g.*, *id.* at ¶ 21 ("It is believed and therefore averred that Defendant Transunion [sic] notified Defendant CAC of the Plaintiff's dispute.").

[9] *Id.* at ¶¶ 24, 50, 52, 64.

[10] *Id.* at ¶¶ 53–117.

2

both parties agree was assigned to Credit Acceptance.[11] Besides spelling out the terms for Cooper's purchase of a Chevy Malibu, the agreement contains an arbitration clause.[12] In relevant part, the arbitration clause provides:

> This Arbitration Clause describes how a Dispute (as defined below) may be arbitrated . . . .  In this Arbitration Clause, "We" or "Us" mean Seller and/or Seller's assignee (*including, without limitation, Credit Acceptance Corporation*) . . . .
>
> A "Dispute" is any controversy or claim between You and Us arising out of or in any way related to this Contract, including, but not limited to, any default under this Contract, the collection of amounts due under this Contract, the purchase, sale, delivery, set-up, quality of the Vehicle, advertising for the Vehicle or its financing, or any product or service included in this Contract. "Dispute" shall have the broadest meaning possible, and includes contract claims, and claims based on tort, violations of laws, statutes, ordinances[,] or regulations . . . .
>
> Either You or We may require any Dispute to be arbitrated and may do so before or after a lawsuit has been started over the Dispute . . . .[13]

Credit Acceptance moves to compel arbitration based on this agreement, arguing that any violations of the FCRA stemming from inaccuracies regarding Cooper's account are governed by its provisions.[14]

---

[11] *See* ECF Nos. 33 at 2 ("Credit Acceptance accepted assignment of the Contract."); 35 at 2 ("The loan agreement was assigned to Defendant Credit Acceptance.").

[12] ECF No. 33-2 at 2.

[13] *Id.* at 6 (emphasis in original).

[14] ECF No. 33.

**Discussion**

The Federal Arbitration Act states a strong preference that parties arbitrate disputes when they have a valid agreement to do so.[15] Under the FAA, a district court must determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."[16] An arbitration agreement "may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue."[17] Cooper does not deny that she signed an arbitration agreement with Credit Acceptance, that the agreement attached to Credit Acceptance's motion is authentic, or that the FAA governs that arbitration agreement.[18] Instead, she argues that either her claims fall outside the scope of the agreement or that the agreement's arbitration provisions are invalid because they are unconscionably broad.[19] Neither argument succeeds.

**I.     Cooper's claims fall within the scope of the arbitration agreement.**

Generally, the court determines the validity and scope of an agreement to arbitrate, including whether the parties have submitted a particular dispute to arbitration.[20] "[A]rbitration

---

[15] 9 U.S.C. § 2; *see also Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 220 (1987) ("The Arbitration Act establishes a federal policy favoring arbitration, requiring that the courts rigorously enforce arbitration agreements.").

[16] *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

[17] *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

[18] *See* ECF No. 35 at 2.

[19] *Id.* at 8–22.

[20] *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) ("The question [of] whether the parties have submitted a particular dispute to arbitration" is a "question of arbitrability" and "an issue for judicial determination."); *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013).

4

is simply a matter of contract between parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration."[21]  To resolve questions of scope, courts "look to the express terms of the agreements at issue," "keeping in mind that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'"[22]

The arbitration clause at issue here encompasses Cooper's FCRA claims.  The Ninth Circuit has long held that statutory claims may be subject to an arbitration agreement that broadly "refer[s] to 'any disputes,' 'all claims,' and disputes 'arising from'" the parties' contractual arrangement.[23]  Here, the parties' agreement allows either party to require "any Dispute to be arbitrated" and defines "Dispute" as "any controversy or claim between You and Us arising out of or in any way related to this Contract, including, but not limited to, any default under this Contract, the collection of amounts due under this Contract . . . or any product or service included in this Contract."[24]  It continues by noting that disputes include "contract claims" and claims "based on tort, violations of laws, statutes, ordinances[,] or regulations . . . ."[25]  Cooper does not contest that this contract refers to the allegedly inaccurate Credit Acceptance account at the heart of this action.  So these terms clearly encompass Cooper's FCRA claims because any inaccuracies in this account, and resulting inaccurate reporting,

---

[21] *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).

[22] *Ferguson v. Corinthian Coll., Inc.*, 733 F.3d 928, 938 (9th Cir. 2013) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 2425 (1983)); *see also Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1139 (9th Cir. 1991).

[23] *See, e.g., Ferguson*, 733 F.3d at 938 (reasoning that plaintiff's unfair-competition law, false-advertising law, and Consumer Legal Remedies Act claims fell within the scope of an arbitration agreement, which broadly stated that "any disputes" and "all claims" "arising from [her] enrollment" were arbitrable).

[24] ECF No. 33-2 at 6.

[25] *Id.*

"aris[e] out of" and "relate[] to this Contract."[26] And while neither side identifies a Ninth Circuit decision affirming that an FCRA claim would be subject to arbitration under a similar arbitration agreement, numerous district courts have held as much.[27]

Cooper argues that such a plain reading renders the agreement unconscionably broad, and she cites numerous cases invalidating overly broad arbitration agreements.[28] But the cases that Cooper cites are inapposite because each invalidated arbitration clauses that purported to cover all disputes, both past and present, that might arise between the parties and not, as is the case here, disputes arising from or related to the underlying contract or transaction.[29] And despite

---

[26] *See id.*

[27] *See, e.g.*, *Peterson v. Lyft, Inc.*, No. 16-cv-07343, 2018 WL 6047085, at *3 (N.D. Cal. Nov. 19, 2018) ("[Plaintiff's] FCRA claim arises out of [defendant's] background checks, and hence the claim is at least loosely related to a 'legal dispute[] or claim[] arising out of the Agreement' that the parties agreed to arbitrate."); *Howard v. Navient Sol., LLC*, No. C18-5333, 2018 WL 5112634, at *3 (W.D. Wash. Oct. 18, 2018) (holding that plaintiff's FCRA claims based on defendant's "misreporting of [plaintiff's] obligations after bankruptcy settlement" were covered by an arbitration agreement "phrased to cover any claim that 'arises from or relates in any way to the Note'") (emphasis omitted); *Newell v. Am. Ins. Adm'rs, LLC*, No. 7:15CV00310, 2016 WL 627357, at *3 (W.D. Va. Feb. 16, 2016) (finding that an arbitration agreement governed plaintiff's FCRA claims, when "the Agreement was the source of the alleged debt and [plaintiff's] payment obligations" and provided that "'all claims . . . arising out of or relating to' the Agreement" were subject to arbitration).

[28] *See* ECF No. 35 at 8–22.

[29] *See, e.g.*, *Hearn v. Comcast Cable Commc'ns, LLC*, 415 F. Supp. 3d 1155, 162 (N.D. Ga. 2019) ("Unlike the standard arbitration clauses typically found in commercial contracts, the arbitration provision at issue in this case lacks language limiting the scope of arbitrable claims to those 'arising out of' or 'relating to' the 2016 Service agreement."); *Wexler v. AT&T Corp.*, 211 F. Supp. 3d 500, 502 (E.D.N.Y. 2016) (holding that the agreement is unconscionably "broad" because it "purports to require arbitration of claims against third parties" and "is not limited to disputes concerning" the underlying agreement); *In re Jiffy Lube Intern., Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253, 1263 (S.D. Cal. 2012) (declining to find Telephone Consumer Protection Act claims fell within the scope of an arbitration agreement that "purport[ed] to apply to 'any and all disputes' between [defendant and plaintiff], and is not limited to disputes arising from or related to the transaction or contract at issue").

Cooper's heavy reliance on the Seventh Circuit's decision in *Smith v. Steinkamp*,[30] that court's reasoning only confirms my decision.  There, the court interpreted an arbitration agreement as only encompassing statutory claims that arose from or related to the underlying agreement, and declined defendant's request to read the arbitration agreement as "standing free from any loan agreement."[31]  Such is the case here.  Credit Acceptance only seeks to enforce the arbitration clause over Cooper's FCRA claims that arise from and relate to their underlying contract; it does not seek to apply the arbitration agreement to an entirely independent suit.  So I do not find that the arbitration clause, as written, is unconscionably or unduly broad.

## II.     The agreement is not unconscionable.

"Nevada law requires both procedural and substantive unconscionability to invalidate a contract as unconscionable."[32]  Procedural unconscionability refers to a party's unequal bargaining power and misunderstanding of the provision's effects.[33]  Substantive unconscionability focuses on whether an agreement's terms are one-sided or bilateral.[34]  While a greater showing of one can compensate for a diminished showing of the other, "both must exist to invalidate a contract as unconscionable."[35]  Even were I to accept that the arbitration agreement's definition of "dispute" is unconscionably broad, which I do not,[36] Cooper does not

---

[30] *Smith v. Steinkamp*, 318 F.3d 775 (7th Cir. 2003).

[31] *Id.* at 777.

[32] *U.S. Home Corp. v. Michael Ballesteros Tr.*, 415 P.3d 32, 40 (Nev. 2018) (citing *Burch v. Second Judicial Dist. Court*, 49 P.3d 647, 750 (2002)).

[33] *D.R. Horton, Inc. v. Green*, 96 P.3d 1159, 1162 (Nev. 2004) (citing *Burch*, 49 P.3d at 650), *overruled on other grounds U.S. Home Corp.*, 415 P.3d at 190–91; *see also Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 893 (9th Cir. 2002).

[34] *D.R. Horton, Inc.*, 96 P.3d at 1162–63.

[35] *U.S. Home Corp.*, 415 P.3d at 193 (Nev. 2018).

[36] *See supra* Section I.

7


argue that the agreement is also procedurally unconscionable. So I also decline to invalidate the agreement on unconscionability grounds.

### III.  Dismissal in favor of arbitration

When a district court "determines that all of the claims raised in the action are subject to arbitration," it "may either stay the action or dismiss it outright."[37] Here, all claims against Credit Acceptance are subject to arbitration and the remaining defendants in this action have been dismissed. And because Cooper does not oppose Credit Acceptance's request for dismissal, I dismiss this case without prejudice to the arbitration of Cooper's claims.

### Conclusion

IT IS THEREFORE ORDERED that Credit Acceptance's motions to dismiss and compel arbitration **[ECF Nos. 33, 34] are GRANTED**. This case is dismissed without prejudice to the arbitration of Cooper's claims. As all other defendants have been dismissed from this action, the Clerk of Court is directed to **CLOSE THIS CASE**.

_____
U.S. District Judge Jennifer A. Dorsey
September 30, 2020

---

[37] *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014) (citing *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (holding that a district court may sua sponte dismiss a case if all claims are subject to an arbitration agreement)) (affirming dismissal without prejudice for arbitration of plaintiff's claims); *see also Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration.").